IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD NICHOLAS WRIGHT, JR. : CIVIL ACTION
                              :
         v.                   :
                              :
PAUL K. SMEAL, et al.           :     No. 08-2073

## **MEMORANDUM**

LOWELL A. REED, JR., Sr. J.                     December 23, 2009

      Presently before this court is a counseled petition for writ of habeas corpus (Doc. No. 1) filed pursuant to 28 U.S.C. § 2254 by Edward Nicholas Wright, Jr., ("Wright"), the response thereto (Doc. No. 8), and Wright's reply (Doc. No. 20). Wright, who is currently incarcerated in the State Correctional Institution at Smithfield, Pennsylvania, challenges his incarceration for robbery, aggravated assault and criminal conspiracy. For the reasons that follow, the petition will be denied.

## **FACTS AND PROCEDURAL HISTORY:**

      On December 30-31, 1996, Wright and three other men were involved in six separate gunpoint robberies involving six separate victims in the city and county of Lancaster over a period of time from 4:45 p.m. until shortly after midnight.[1] (N.T. 1/8/98, 166-200; 1/9/98, 309-336); see Arrest Warrant/Affidavit (Jan. 1, 1997). Two of the victims were shot during the robberies, a female in the chest, arm and buttocks; and a

---

[1]There is an inconsistency in dates throughout the record. However, Wright's arrest warrant and criminal complaint show that the incidents in question occurred on December 30, 1996, and into the early hours of December 31, 1996.

male in the leg. (N.T. 1/8/98, 98-120). Wright accompanied his cohorts in the car over the course of the evening, but never left the vehicle to actively participate in the robberies. (N.T. 1/9/98, 232).

After a jury trial before the Honorable Michael J. Perezous, Court of Common Pleas of Lancaster County, Wright was convicted of six counts of robbery, two counts of aggravated assault and seven counts of criminal conspiracy. On March 2, 1998, Wright was sentenced to an aggregate term of thirty-five to seventy years of imprisonment.

Wright filed a direct appeal asserting the following claims:

1) ineffective assistance of counsel for failing to call alibi witnesses;

2) ineffective assistance of counsel for failing to move to suppress Wright's involuntary and purportedly unreliable statement to police;

3) the evidence was insufficient to support the verdict;

4) the verdicts of guilty were against the weight of the evidence; and

5) the recanted testimony of witness Jonathan Fowler constituted after-discovered evidence mandating a new trial.

On May 25, 1999, the Pennsylvania Superior Court affirmed the judgment of sentence. Commonwealth v. Wright, 739 A.2d 593 (Pa. Super. 1999); No. 425 Harrisburg 1998 (Pa. Super. May 25, 1999) (unpublished memorandum), attached as Ex. "B" to Respondents' Answer to the Petition for a Writ of Habeas Corpus (Doc. No. 8; hereinafter "Answer"). The Pennsylvania Supreme Court denied Wright's petition for allowance of appeal on November 23, 1999. Commonwealth v. Wright, 747 A.2d 368 (Pa. 1999).

On November 22, 2000, Wright filed a pro se petition under Pennsylvania's Post

Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. § 9541, et seq. Wright's petition was

dismissed by the PCRA court without the appointment of counsel and without a hearing.

On appeal, the Pennsylvania Superior Court remanded the case for appointment of

counsel. Counsel was appointed and subsequently filed an amended petition. After

evidentiary hearings were held on September 17, 2003, and March 18, 2004, the PCRA

court denied Wright's petition on October 8, 2004. See Commonwealth v. Wright, No.

490 of 1997, 2538 of 1997, 2539 of 1997 (Lancaster County Court of Common Pleas,

Oct. 8, 2004), attached as Ex. "H" to Respondents' Answer.

On appeal to the Pennsylvania Superior Court, Wright presented the following

layered claims of ineffective assistance of counsel:

> 1) counsel was ineffective for failing to file a motion to suppress Wright's
> statements which were the product of an illegal and unconstitutional
> warrantless arrest;
>
> 2) counsel was ineffective for failing to file a motion to modify sentence; and
>
> 3) counsel was ineffective for failing to object to the testimony of Police Officer
> Kevin Ford.

On July 1, 2005, the Superior Court affirmed the denial of Wright's PCRA petition.

Commonwealth v. Wright, No. 1645 MDA 2004 (Pa. Super. July 1, 2005) (unpublished

memorandum), attached as Ex. "J" to Respondents' Answer. Wright filed a timely

petition for allowance of appeal in the Pennsylvania Supreme Court which was denied on

March 6, 2008.

On April 21, 2008,[2] Wright filed this petition for a federal writ of habeas corpus

with an accompanying memorandum of law presenting the following issues:

> 1) a layered claim of ineffective assistance of counsel for failing to object to the testimony of Police Officer Kevin Ford regarding a statement he had taken from a victim who did not testify at trial;

> 2) a layered claim of ineffective assistance of counsel for failing to file a motion to suppress statements obtained pursuant to his alleged illegal arrest;

> 3) a layered claim of ineffective assistance of counsel for failing to object to the imposition of consecutive sentences; and

> 4) a claim that the recanted testimony of witness Jonathan Fowler constitutes after-discovered evidence establishing his actual innocence.

See Form for Use in Application for Habeas Corpus Under 28 U.S.C. § 2254 (Doc. No. 1,

hereinafter "Petition") and Petitioner's Memorandum of Law in Support of Petition for

Writ of Habeas Corpus (Doc. No. 1, hereinafter "Memorandum of Law").  Respondents

have filed an answer asserting that Wright is not entitled to federal habeas relief because

his claims are unexhausted and procedurally defaulted.  See Answer (Doc. No. 8).

Wright has filed a counseled reply thereto.  See Petitioner's Reply to Respondents'

Answer to the Petition for a Writ of Habeas Corpus (Doc. No. 20, hereinafter "Reply").

Because I find that these claims have been properly exhausted in the state courts, I will

---

[2]Generally, a pro se petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court.  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)).  Wright originally filed his habeas petition pro se and signed it on April 21, 2008; therefore, I will assume that he presented his petition to prison authorities on that date.  On May 29, 2009, Wright retained counsel for this case.

proceed to review all four claims on the merits.

## DISCUSSION:

### 1.  Standard of Review

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362 (2000).  In Williams, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  529 U.S. at 412-413 (quoted in Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000)).  The Court in Williams further stated that "[u]nder the 'unreasonable application'

clause, a federal habeas court may grant the writ if the state court identifies the correct

governing legal principle from [the Supreme] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable

application" inquiry requires the habeas court to "ask whether the state court's application

of clearly established federal law was objectively unreasonable." Id. at 409. "In further

delineating the 'unreasonable application of' component, the Supreme Court stressed that

an unreasonable application of federal law is different from an incorrect application of

such law and a federal habeas court may not grant relief unless that court determines that

a state court's incorrect or erroneous application of clearly established federal law was

also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411).

**Claim 1:  Ineffective Assistance of Counsel for Failing to Object to Hearsay**

In his first claim, Wright contends that trial counsel was ineffective for failing to

object to inadmissible hearsay in Officer Kevin Ford's testimony and that appellate

counsel was ineffective for failing to present this issue on appeal.[3]  Claims of ineffective

---

[3]A federal court, absent unusual circumstances, should not entertain a petition for writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254. A petitioner typically exhausts his federal claims by fairly presenting each claim at each stage of the state's established review process. Villot v. Varner, 373 F.3d 327, 337 (3d Cir. 2004). Wright presented his first claim in his PCRA appeal. Commonwealth v. Wright, No. 1645 MDA 2004, at 9-10 (Pa. Super. July 1, 2005) (unpublished memorandum), attached as Ex. "J" to Respondents' Answer. Although Respondents claim that the variation of the claim presented in Wright's habeas petition differs from that raised in the state courts, see Respondents' Answer, at 9-10, I find that the claims are substantially equivalent when one reads Wright's memorandum of law in conjunction with the claims presented in his habeas petition. See Evans v. Court of Common Pleas, Delaware County, Pa, 959 F.2d 1227, 1232 (3d Cir. 1992)). In light of his presentation of this fully developed constitutional claim to the state courts,

assistance of counsel are governed by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In

<u>Strickland</u>, the United States Supreme Court set forth the standard for a petitioner seeking

habeas relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance
> was deficient. This requires showing that counsel made errors
> so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second,
> the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

<u>Id.</u> at 687.

Because "it is all too easy for a court, examining counsel's defense after it has

proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable," a court must be "highly deferential" to counsel's performance and

"indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. In determining

prejudice, "the question is whether there is a reasonable probability that, absent the errors,

the factfinder would have had a reasonable doubt respecting guilt." <u>Id.</u> at 695. "[A] court

need not determine whether counsel's performance was deficient before examining the

prejudice suffered by the defendant as a result of the alleged deficiencies." <u>Id.</u> at 697. "If

it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

---

I will review this claim on the merits. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (a <u>pro se</u>
petition should be held to less stringent standards than formal pleadings drafted by lawyers).

prejudice . . . that course should be followed." Id.

"It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams, 529 U.S. at 391. Thus, Wright is entitled to relief if the Pennsylvania courts' decision rejecting his claims of ineffective assistance of counsel was either "contrary to, or involved an unreasonable application of," that established law. Id.

As previously noted, Wright argues that trial counsel was ineffective for failing to object to inadmissible hearsay when Officer Ford referred to Thomas Stewart by name during the officer's testimony. Thomas Stewart was an alleged victim during the criminal offenses which occurred on December 30, 1996. Wright specifically objects to the following testimony:

> Q:    Directing your attention to December the 30th, 1996, at approximately 10:00 p.m. that evening, do you recall responding to a report of an armed robbery in the 300 block of East Frederick Street, which had just occurred?
>
> A:    Yes, I do.
>
> Q:    And did you take a report from a purported victim at that time?
>
> A:    Yes, I did.
>
> Q:    And what, if any, description of that victim can you give?
>
> A:    His name was Thomas Stewart, black male, about 14 years of age.
>
> Q:    I have nothing further.

(N.T. 1/9/98, 267-268). Although Mr. Stewart did not testify at trial, Wright was charged

with his robbery.  Wright argues that Officer Ford's testimony was inadmissible hearsay

which improperly allowed the Commonwealth to establish the identity of Mr. Stewart.

Wright also contends that without Officer Ford's testimony he could not have been

convicted of the Stewart offense which carried a mandatory minimum sentence of five to

ten years.

Upon review of this claim, the state court concluded that Wright had failed to

establish the requisite prejudice to prevail under Strickland.  In support thereof, the court

reasoned:

> It is arguable that a reasonable jury would not convict a defendant of a
> serious crime based solely upon the testimony of an alleged accomplice in
> the absence of a named victim.  However . . . Fowler testified to the robbery
> of a young black male during the crime spree.  This testimony, not the
> testimony of Officer Ford, provided the basis of the robbery charge
> regarding Thomas Stewart.  Based upon the existence of other named
> victims during this crime spree, it is unlikely that a jury would have found
> Fowler's testimony wholly incredible on the basis of the mere failure to
> identify only one of the . . . victims.  As a result, Wright has failed to
> establish the prejudice he suffered from the identification of Stewart by
> name.

Commonwealth v. Wright, No. 1645 MDA 2004, at 10 (Pa. Super. July 1, 2005)

(unpublished memorandum), attached as Ex. "J" to Respondents' Answer.

I conclude that the Superior Court's adjudication of Wright's claim did not result

in a decision that was contrary to, or an unreasonable application of, Strickland.  Officer

Ford's testimony was the only evidence presented that identified Thomas Stewart by

name.  However, Jonathan Fowler, Wright's accomplice, had testified as a

Commonwealth witness prior to Officer Ford's testimony. As the state court noted, Fowler enumerated the offenses which had occurred against six victims, none of whom were identified by name. (N.T. 1/8/98, 166-202; 1/9/98, 208-250). In doing so, Jonathan Fowler testified that he and his cohorts had robbed a young "[s]hort black kid." (N.T. 1/8/98, 184-186; 1/9/98, 229-230, 246). Although five of the other victims had already been identified through their testimony at trial, (N.T. 1/8/98, 75-120), no one who met this description testified against Wright at trial. I conclude, however, that failure to identify the sixth victim, Thomas Stewart, by name during the trial would not have prevented the jury from convicting Wright of the Stewart robbery. During the trial, Fowler had testified in detail as to crimes that occurred that evening. Because this testimony was in accordance with the testimony of the five other victims who did testify, I conclude that it is reasonable to believe that a jury would have found Fowler's testimony credible, even in the absence of Mr. Stewart's identification by name.[4] In light thereof, Fowler's testimony would have formed the basis for Wright's conviction for the Stewart robbery rather than Officer Ford's identification. Consequently, I cannot say that Wright has established prejudice by Officer Ford's reference to Thomas Stewart. As a result, counsel cannot be deemed ineffective for failing to raise an objection to his testimony.

Because this is a layered claim of ineffective assistance of counsel, this court must

---

[4]Indeed, trial counsel testified at Wright's PCRA hearing that he did not believe that Officer Ford's testimony hindered the case because Fowler's testimony "made" the case against Wright. (N.T. 9/17/03, 27-28).

next determine whether Wright's right to effective assistance of counsel on direct appeal,

see Evitts v. Lucey, 469 U.S. 387, 393-94 (1985), was violated when the attorney who

represented him at that stage failed to argue that trial counsel had rendered ineffective

assistance with regard to this claim. In order to satisfy the first prong of the Strickland

test, Wright is required to show that appellate counsel's failure to raise the

abovementioned argument on appeal fell outside "the wide range of reasonable

professional assistance; that is, [he would have to] overcome the presumption that, under

the circumstances, the challenged action 'might be considered sound [appellate]

strategy.'" Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999) (citing Strickland, 466

U.S. at 689). "One element of effective appellate strategy is the exercise of reasonable

selectivity in deciding which arguments to raise." Id.; see Smith v. Murray, 477 U.S. 527,

536 (1986) (stating that the "process of 'winnowing out weaker arguments on appeal and

focusing on' those more likely to prevail, far from being evidence of incompetence, is the

hallmark of appellate advocacy") (quoting Jones v. Barnes, 463 U.S. 745, 751-752

(1983)).

In this case, the state court concluded that appellate counsel was not ineffective for

failing to raise this issue because the introduction of Officer Ford's statement did not

prejudice Wright and thus, would not entitle Wright to any relief on appeal. See

Commonwealth v. Wright, No. 490 of 1997, 2538 of 1997, 2539 of 1997, at 8 (Lancaster

County Court of Common Pleas, Oct. 8, 2004), attached as Ex. "H" to Respondents'

Answer.  For the reasons previously outlined, I believe that it was reasonable for

appellate counsel to conclude that it was unlikely that he or she could satisfy Strickland's

prejudice test on this claim and that it was therefore strategically unwise to select this

argument on direct appeal.  Consequently, this court concludes that Wright's appellate

counsel did not render constitutionally ineffective assistance.  Buehl, 166 F.3d at 173-74.

Accordingly, this claim must be denied.

## Claim 2: Ineffective Assistance of Counsel for Failing to File a Motion to Suppress

In his second claim, Wright contends that trial counsel was ineffective for failing

to file a motion to suppress statements obtained pursuant to his alleged illegal arrest and

that appellate counsel was ineffective for failing to present this issue on appeal.[5]  See

Petitioner's Memorandum of Law, at 5-9; Petitioner's Reply, at 4.  The state court

---

[5]On his habeas petition, Wright states that trial counsel was ineffective for "a litany of
Errors . . . from Failure to File Motions [to] the lack of Consult in regards to Trial Preparation."
See Petition at 9.  Respondents contend that this claim is too vague and general and thus,
unreviewable.  See Respondents' Answer, at 11.  I note, however, that in Wright's memorandum
of law, he specifies that his claim is based on the fact that "Trial Counsel failed to file a Motion
to Suppress in order to contest the Unconstitutional Arrest and Detention of Petitioner and the
Fruits attained subsequent to said Arrest."  See Petitioner's Memorandum of Law, at 5.  Wright
presented this same claim on collateral review where he argued that prior counsel was ineffective
for failing to raise the issue of the legality of his initial arrest and for failing to file a motion to
suppress.  Commonwealth v. Wright, No. 1645 MDA 2004, at 5-7 (Pa. Super. July 1, 2005)
(unpublished memorandum), attached as Ex. "J" to Respondents' Answer.  As this variation of
his claim has been properly presented to the state courts, I find it to be properly exhausted.  See
28 U.S.C. § 2254(b)(1)(A); see also Haines, 404 U.S. at 520.
     To the extent that Wright is attempting to present any other variation of this claim, see
Petitioner's Reply, at 6-7, I agree with Respondents that Wright has failed provide adequate
information or specifics to render a cognizable claim.  See Zettlemoyer v. Fulcomer, 923 F.2d
284, 298 (3d Cir. 1991) (bald assertions and conclusory allegations do not provide sufficient
ground for habeas relief, a petitioner must set forth facts to support his contention of a federal
constitutional violation).  Consequently, any other variation of this claim is dismissed.

summarized the circumstances leading up to Wright's arrest as follows:

> Just before midnight . . . Officer Chris Laser of the Lancaster Bureau of Police heard a gunshot from about a block away from where he was located. Officer Laser radioed a report after which, other officers responded to his location. The officers pulled into a parking lot in the area and proceeded to walk on foot.

> Shortly thereafter, the officers heard more gunshots. Officer Laser then received a report that a group of individuals were running from the area in which he heard the original gunshot. After observing four individuals running toward the parking lot where he was located, Officer Laser approached them, identified himself and instructed the individuals to stop. When they ignored him, Officer Laser tackled Wright and arrested him for disorderly conduct.

> Once at the station, Wright was questioned by Detective Kent Switzer. During this interview, Wright admitted to his involvement in a string of armed robberies committed by his associates.

Commonwealth v. Wright, No. 1645 MDA 2004, at 1-2 (Pa. Super. July 1, 2005)

(unpublished memorandum), attached as Ex. "J" to Respondents' Answer. Wright argues

that his arrest was illegal because Officer Laser did not possess probable cause to believe

that Wright had engaged in criminal activity before tackling him and that therefore, his

confession pursuant to that arrest should not have been admitted at trial.

In denying this claim, the state court did not make an explicit finding of fact as to

whether Officer Laser possessed sufficient probable cause to arrest Wright.

Commonwealth v. Wright, No. 1645 MDA 2004, at 5-7 (Pa. Super. July 1, 2005)

(unpublished memorandum), attached as Ex. "J" to Respondents' Answer. Nevertheless,

the court concluded that Wright's confession would be deemed admissible even if his

arrest were illegal and that therefore, counsel could not be found ineffective for failing to move to suppress that statement.  Id.  In reaching this conclusion, the court noted that all statements made by an illegally arrested person are not per se inadmissible as trial evidence.  Id. at 6 (citing Commonwealth v. Martinez, 649 A.2d 143, 147 (Pa. Super. 1994)).  See also Wong Sun v. United States, 371 U.S. 471, 488 (1963) (the test for determining excludability when the police have acted illegally is whether the evidence has been obtained "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint").  The court then pointed out that:

> [S]everal factors [are] to be considered in scrutinizing an individual case: (1) whether Miranda warnings were given; (2) the "temporal proximity of the arrest and confession;" (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct.

Id. (quoting Commonwealth v. Bogan, 393 A.2d 424, 427 (1978)).  See also Brown v. Illinois, 422 U.S. 590, 603-604 (1975).  In applying this law to Wright's case, the court concluded:

> Wright does not contest that he was read his Miranda rights.  Furthermore, Wright makes no claim that his statement was involuntary.  Finally, while the circumstances surrounding Wright's arrest lead to questions about the legality of the arrest, there is no evidence that any impropriety was flagrant or purposeful.

Id.

The reasonableness of counsel's conduct must be judged based on the facts of the particular case at the time the questioned conduct occurred.  Strickland, 466 U.S. at 690. In light of Pennsylvania and federal law, counsel cannot be deemed ineffective for failing

to move to suppress statements Wright made subsequent to his arrest.  See Bogan, supra,

Martinez, supra.  As the state court concluded, Wright was read his Miranda rights and

voluntarily made his statement.  See Brown, 422 U.S. at 603-604.  Moreover, there is no

evidence that any impropriety in his arrest was "flagrant or purposeful."  Id.  While the

"temporal proximity" factor was not expressly considered by the state courts, I note that

the Supreme Court has determined that the question whether a defendant's statement,

given after an illegal arrest and Miranda warnings, is the product of a free will "must be

answered on the facts of each case . . . [n]o single fact is dispositive."  Brown, 422 U.S. at

603; see also United States v. Ceccolini, 435 U.S. 268, 280 (1978) ("no mathematical

weight can be assigned to any of the factors" to be considered when analyzing the

admissibility of a statement made pursuant to an illegal act of the police).  In the instant

case, Wright's inculpatory statement was given to police approximately 24 hours after his

arrest.  (N.T. 1/9/98, 309-310).  Although there is some question as to whether this time

frame constitutes sufficient temporal attenuation to purge the taint of an illegal arrest, I

conclude that other evidence weighs in favor of finding that Wright's confession was

voluntary rather than a result of an illegal arrest.  The Pennsylvania Superior Court has

held that "when a suspect makes a damaging admission when confronted with evidence

such as, that the suspect matched the description of the assailant, [Bogan, 393 A.2d 424],

or that a co-conspirator named the suspect as the individual who shot an individual during

a gang war, Commonwealth v. Fogan, 296 A.2d 755 (Pa. 1972), 'intervening

circumstances' are present such that it may not be said that the acquired evidence has been directly derived from, and thereby tainted by the illegal arrest." Commonwealth v. Haynes, 577 A.2d 564, 572, 573 (Pa. Super. 1990) (citing Commonwealth v. Farley, 364 A.2d 299 (Pa. 1976)). Here, Wright made his inculpatory statement to police after he was confronted with information that one of his coconspirators, Jonathan Fowler, had implicated him in a robbery. (N.T. 1/9/98, 314-315). Up until that time, Wright had not provided any information regarding the crimes which had occurred on the previous evening. Haynes, 577 A.2d at 572-573. Therefore, Fowler's statement to police regarding Wright's involvement, "rather than any exploitation of an 'illegal arrest,'" prompted Wright's incriminating admission. Id. at 573; see Bogan, 393 A.2d at 427. As such, the "temporal proximity" issue becomes less important than evidence indicating the voluntary nature of Wright's statement. Based on the facts stated above, I conclude that any motion to suppress Wright's statement to police would have been denied by the trial court. Accordingly, counsel cannot be deemed ineffective for failing to file a meritless motion to suppress and this claim must be denied.

Given the circumstances surrounding Wright's statement to police, I also conclude that appellate counsel could have reasonably concluded that it was strategically inadvisable to select that argument as one of those to be raised on appeal. Buehl, 166 F.3d at 174. As a result, I conclude that habeas relief is not appropriate for this issue.

**Claim 3:  Ineffective Assistance of Counsel for Failing to Challenge Sentence**

In his third claim, Wright argues that trial counsel was ineffective for failing to challenge the imposition of consecutive sentences and that appellate counsel was ineffective for failing to present this issue on appeal.[6]  Wright received mandatory 5 to 10 year sentences for each of his six robbery convictions and each of his two aggravated assault convictions.  The robbery convictions were consecutive to one another, while the aggravated assault convictions were consecutive to the robbery convictions but concurrent to each other.  In sum, Wright was sentenced to 35 to 70 years of imprisonment.

In reviewing this claim, the state court noted that an appellate court will only disturb sentences on a showing that the sentencing court manifestly abused its discretion.  Commonwealth v. Wright, No. 1645 MDA 2004, at 8 (Pa. Super. July 1, 2005) (unpublished memorandum), attached as Ex. "J" to Respondents' Answer (citing Commonwealth v. Boyer, 856 A.2d 149, 153 (Pa. Super. 2004)).  As the Superior Court observed, a sentencing court's discretion is limited by 42 Pa. Cons. Stat. Ann. § 9721(b), which provides that sentences must be individualized to the particular case and defendant.

---

[6]Respondents argue that this claim was not properly presented to the state courts because it was based on a different legal theory and factual basis in that forum.  See Respondents' Answer at 9-10.  I disagree.  On collateral appeal in the state courts, Wright argued that prior counsel were ineffective for failing to challenge the consecutive nature of his sentences.  Commonwealth v. Wright, No. 1645 MDA 2004, at 7-9 (Pa. Super. July 1, 2005) (unpublished memorandum), attached as Ex. "J" to Respondents' Answer.  Wright has presented substantially the same argument in his habeas petition, thus, I conclude that this claim has been properly exhausted in the state courts.  See Haines, 404 U.S. at 520.

Id.  Section 9721 also provides that the sentence must be consistent with: (1) the

protection of the public, (2) the gravity of the offense; and (3) the rehabilitative needs of

the defendant.  Id.

> In denying this claim, the state court concluded that:
>
> [T]he trial court considered the pre-sentence investigation report.
> Furthermore, the trial court noted that, while Wright was not directly
> involved in the robberies and assaults, he did not avail himself of the
> opportunity, as one co-conspirator did, of leaving the conspiracy after
> learning of the violence being perpetrated.  As a result, the trial court
> concluded that the only way to protect the public from Wright was to
> incarcerate him for an extended time.  N.T. 3/2/1998, at 9.  We can find no
> indication that the trial court did not treat Wright and his crimes in an
> individualized fashion.  We therefore cannot find that Wright's trial counsel
> was ineffective for failing to file a motion to modify his sentence.

Commonwealth v. Wright, No. 1645 MDA 2004, at 8-9 (Pa. Super. July 1, 2005)

(unpublished memorandum), attached as Ex. "J" to Respondents' Answer.

Here, Wright was found guilty of six counts of robbery.  The trial court reviewed

Wright's pre-sentence report at the sentencing hearing, specifically referencing his

juvenile record, school record, and the circumstances surrounding the crimes at issue.

(N.T. 3/2/98, 2, 4-6).  The trial court also heard testimony from the arresting detective

regarding Wright's lack of remorse and candidness.  (N.T. 3/2/98, 6-7).  The court then

stated:

> [Y]ou and your co-defendants did not discriminate at all.  You robbed from
> males and you robbed from females.  A female was shot.  A male was shot.
> You robbed from blacks, from whites, from Hispanics.  In two different
> jurisdictions.  It's not that you stopped when you were done in Lancaster,
> because then you went to another town, Columbia, and continued your

activities. And for that, upon being convicted by a jury, you deserve to be punished, very frankly; and the only way that we have of ensuring that people's right to be free from fear continues is to put you away, quite frankly.

(N.T. 3/2/98, 8-9).

The crux of Wright's argument is that trial counsel was ineffective for failing to challenge the imposition of consecutive sentences; however, it is well established under Pennsylvania law that a sentencing court has discretion to impose concurrent or consecutive sentences. Commonwealth v. Pass, 914 A.2d 442, 446-47 (Pa. Super. 2006) ("42 Pa. Cons. Stat. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively . . . Any challenge to the exercise of this discretion ordinarily does not raise a substantial question."). Moreover, the trial court complied fully with governing law by explaining its sentencing decision while considering Wright's individualized history and the circumstances surrounding his crimes. See 42 Pa. Cons. Stat. Ann. § 9721. Because the sentencing court did not abuse its discretion in imposing sentence upon Wright, and the sentence was legal under the law,[7] trial counsel cannot be found ineffective for failing to object to the sentence the court imposed. In a similar manner, appellate counsel cannot be faulted for failing to pursue this meritless claim on appeal. Buehl, 166 F.3d at 174. Accordingly, this claim must be denied.

--------------------------------

[7]Wright was found guilty of six counts of robbery in the first degree. See Petitioner's Brief Sur Amended PCRA (April, 22, 2004). Robbery of the first degree is subject to a statutory maximum sentence of 20 years. See 18 Pa. Cons. Stat. § 1103. As previously noted, Wright was sentenced to 5 to 10 years of imprisonment for each robbery conviction.

**Claim 4: Actual Innocence**

In his fourth claim, Wright argues that an August 1998 sworn statement in which Jonathan Fowler, the prosecution's primary witness, recants his testimony against Wright proves Wright's actual innocence.[8]  See Reply, at 5.  In Herrera v. Collins, 506 U.S. 390 (1993), the Supreme Court held that "a claim of 'actual innocence' is not itself a constitutional claim."  Id. at 404; see Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004) ("It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'") (quoting Herrera, 506 U.S. at 400).  The Supreme Court has also, however, left open the possibility that "in a *capital* case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there was no state avenue open to process such a claim."  Id. at 417 (emphasis added); see also House v. Bell, 547 U.S. 518 (2006) (leaving open the question as to whether a freestanding claim of actual innocence would warrant federal habeas relief in a capital case).  More recently, the Court assumed in dicta that a non-capital litigant who brought an action under 42 U.S.C. § 1983

---

[8]Respondents erroneously contend that this claim was never included in any of Wright's state court appeals.  See Respondents' Answer, at 8.  On direct appeal, Wright argued that the statement of Jonathan Fowler provides exculpatory evidence which proves that he is innocent of least one or more of the crimes of which he was convicted.  See Commonwealth v. Wright, 739 A.2d 593 (Pa. Super. 1999); No. 425 Harrisburg 1998, at 2 (Pa. Super. May 25, 1999) (unpublished memorandum), attached as Ex. "B" to Respondents' Answer.  As the "actual innocence" claim which Wright has presented in the instant habeas petition is the same claim exhausted in the state courts, I will review this claim on the merits.

could assert a freestanding claim of actual innocence.  <u>District Attorney's Office for the Third Judicial District v. Osborne</u>, 129 S.Ct. 2308, 2321 (June 18, 2009) ("Whether such a federal right exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo,* that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.  In this case too we can assume without deciding that such a claim exists. . .") (citing <u>House</u>, 547 U.S. at 554-555; <u>Herrera</u>, 506 U.S. at 398-417).  In order to prevail on such a freestanding claim of actual innocence, however, a petitioner would have to meet an "extraordinarily high" standard of review.  <u>Herrera</u>, 506 U.S. at 417; <u>Albrecht v. Horn</u>, 485 F.3d 103, 122 (3d Cir. 2007).  I conclude that Wright has failed to meet even a minimal threshold of establishing actual innocence, let alone the "extraordinarily high" standard of review contemplated by the Supreme Court.  <u>House</u>, 547 U.S. at 555; <u>see also</u> <u>Herrera</u>, 506 U.S. at 417.

Wright argues that his actual innocence is established by the fact that Jonathan Fowler has recanted his trial testimony that Wright provided the gun used during the crimes.  <u>See</u> Petitioner's Memorandum of Law, at 11.  In his statement, Fowler also noted that he felt that Wright was incapable of participating in the events of the night in question because Wright was "high and drunk."  <u>See</u> Jonathan Fowler's Statement, attached as Ex. "L" to Respondents' Answer.  This evidence fails to meet the burden of establishing Wright's innocence.  As the state court concluded in dismissing this claim:

> Assuming *arguendo* that Fowler's recantation of [Wright] bringing a .357
> handgun on the night in question as well as his impression that [Wright]
> was high on marijuana and drunk is valid, it is not of such a nature and
> character that a different verdict would likely result if a new trial is granted.
> Our review of the certified record convinces this tribunal that [Wright] was
> more than a willing participant in the felonious activities that occurred. The
> record is replete with evidence that [Wright] began and ended his evening
> with essentially the same group of cohorts, agreed to rob drug dealers,
> actively participated in passing around the two other guns used in the
> robberies and shootings, shared in the "bounty," as well as directing the
> designated driver where to proceed. As [Wright's] submission of Fowler's
> recantation testimony is woefully insufficient to meet the standard for after-
> discovered evidence, we are compelled to affirm his judgment of sentence.

Commonwealth v. Wright, 739 A.2d 593 (Pa. Super. 1999); No. 425 Harrisburg 1998, at

11-12 (Pa. Super. May 25, 1999) (unpublished memorandum), attached as Ex. "B" to

Respondents' Answer.

As the state court found, Fowler's trial testimony regarding Wright's possession of

a handgun and his level of sobriety was just one part of the body of evidence which

established Wright's guilt. See, e.g., (N.T. 1/9/98, 315-327). Wright was clearly

involved in the armed robberies on the evening in question as he and his coconspirators

discussed their plans to obtain money and his coconspirators repeatedly exited the car

armed with at least one gun. Id. When his coconspirators returned to the car, Wright also

admitted to enjoying the fruits of the robberies in the form of marijuana and a pager.

(N.T. 1/9/98, 325, 327). As such, Fowler's recantation falls far short of meeting the

"extraordinarily high" standard of review the Supreme Court has established for review of

actual innocence claims. Herrera, 506 U.S. at 417 (petitioner must meet an

"extraordinarily high" standard of review for a freestanding claim of actual innocence). This is especially true in light of the fact that "[r]ecantation testimony is properly viewed with great suspicion" because statements by recanting witnesses are "very often unreliable and given for suspect motives." Dobbert v. Wainwright, 468 U.S. 1231, 1233-34 (1984) ) (Brennan, J., dissenting). Because Wright has failed to establish his actual innocence, habeas relief is unavailable. Albrecht, 485 F.3d at 122, 126.

## CONCLUSION

After close and objective review of the arguments and evidence, I conclude that Wright's petition for writ of habeas corpus is meritless. As a result Wright's petition will be denied.

Similarly, because Wright's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter. See 28 U.S.C. § 2254(e)(2); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted); see also Campbell v. Vaughn, 209 F.3d 280, 221 (3d Cir. 2000).

An appropriate order follows.